```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**SOUTHERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| EDDIE J. GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 7:20-CV-76-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KILOLO KIJAKAZI, | ) | **and ORDER** |
| ACTING COMMISIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

Plaintiff Eddie J. Griffith ("Griffith") claims that he was disabled due to a 2012 workplace accident. However, an administrative law judge (ALJ) in a prior case concluded that he was not disabled between 2012 and September 2015. In that decision, the prior ALJ found that Plaintiff had a "limited education." Consistent with the law and agency policy, the ALJ in this case likewise found that Plaintiff had a limited education. Plaintiff argues that the ALJ reversibly erred when she did not find that he was illiterate, yet he has not pointed to new and material evidence that would have permitted the present ALJ to reach a factual finding different from the prior ALJ. The ALJ in this case did find that later evidence showed that Plaintiff was more functionally limited than the prior ALJ found. In making this finding, the ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence and that he did not have a medical

need for an assistive device such as a cane. Because more than the requisite "mere scintilla" of evidence supports the ALJ's findings, the Court shall affirm. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Plaintiff applied for disability insurance benefits ("DIB") in 2016. [Tr. 203]. An ALJ's decision denying his application became the Commissioner's final decision when the agency's Appeals Council denied his request for review (Tr. 1-3, 10-22). *See* 20 C.F.R. § 404.981. The Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff was 51 years old on September 4, 2015, the day after a different ALJ denied his prior application for disability benefits, when he claimed he became disabled due to a litany of physical and mental conditions. *See* [Tr. 34-35, 65-78, 217, 228, 232]. He was last insured for DIB on June 30, 2018. [Tr. 228]. He completed the eighth grade and had past relevant work as a company laborer. [Tr. 50, 233, 242].

Plaintiff attributed his alleged disability to a December 2012 workplace accident. *See* [Tr. 328]. In late 2013, Dr. Robert Hoskins examined Plaintiff to rate his whole-person impairment arising from that accident for purposes of workers' compensation [Tr. 343-59]. Dr. Hoskins concluded that Plaintiff's whole-person impairment was 20% and that he could lift up to 50 pounds, sit 90 minutes at a time, and stand or walk 90 minutes at a time with

several postural and environmental limitations. [Tr. 343, 350, 357].

Thereafter, Plaintiff received treatment solely from his primary care physician, Dr. Ira Potter. He reported fluctuating levels of pain. *See* [Tr. 361, 416]. Dr. Potter generally observed that Plaintiff had a positive straight leg raise (a test used to diagnose nerve root involvement in low back pain), reduced range of motion in his lower back and left shoulder, normal ability to stand, and normal mental status. *See* [Tr. 362, 365, 368, 371, 375, 380-81, 384-85, 393, 400-01, 404-05, 426-27, 432, 420, 417]. He simply provided medication management. *See* [Tr. 363, 366, 369, 372, 376-77, 381-82, 385-86, 394, 401-02, 405-06, 427, 433, 421, 418].

In April 2017, consultative psychologist Dr. William Rigby observed that Plaintiff's mood appeared depressed, but his concentration, memory, and judgment were intact. [Tr. 410]. Dr. Rigby opined that Plaintiff had moderate impairment in adaptation and responding to workplace pressures; mild impairment in maintaining social interaction; and no impairment in understanding, retaining, and following simple instructions or sustaining concentration and persistence to complete tasks in a normal time. [Tr. 412-13].

In 2017, State agency medical and psychological consultants reviewed the record to evaluate Plaintiff's physical and mental

3

abilities. *See* 20 C.F.R. § 404.1513a(b)(1) ("[Such] consultants are highly qualified and experts in Social Security disability evaluation."). Dr. Diosdado Irlandez opined that Plaintiff had abilities consistent with a range of medium work. [Tr. 110-12]; *see also* § 404.1567(c) (defining medium work). Dr. Nick Watters and Dr. Michelle Bornstein concluded that because Plaintiff's mental impairments did not cause more than "mild" limitations, they were not "severe." [Tr. 90, 107-08]; *see also* § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe . . . ."); § 404.1522(a) ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims. [Tr. 13-22]; *see also* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found between steps three and four that Plaintiff had the residual functional capacity (RFC) to do a range of light work:

> except [he] could lift and carry twenty-five pounds occasionally and twenty-five pounds frequently. [He] could stand and walk for six hours and can sit for six hours. [He] could occasionally stoop, crouch, kneel, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. [He] could frequently reach overhead with the nondominant left upper extremity. [He] should have avoided concentrated exposure to hazards including unprotected heights and moving machinery, operating a vehicle, and vibration

4

[Tr. 16]; *see also* § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."); § 404.1567(b) (defining light work). At step five, the ALJ found that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy. [Tr. 21-22, 50-52 (vocational expert testimony)]. The ALJ thus concluded that Plaintiff was not disabled under the Act. [Tr. 22]; *see also* § 404.1520(a)(4)(v).

In conducting judicial review of the ALJ's decision, the ALJ's factual findings shall be conclusive if supported by substantial evidence. *Biestek*, 139 S. Ct. at 1153 (quoting 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* A court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

A disability claimant's RFC assessment is a factual finding made by the ALJ. *See* 20 C.F.R. §§ 404.1545, 404.1546; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999) (recognizing that an ALJ's factual findings include a claimant's RFC assessment). Here, the

5

ALJ found that Plaintiff had the RFC to perform a range of light work. [Tr. 16-20]. In reaching this finding, the ALJ weighed the medical opinions, which suggested that Plaintiff was less physically limited than the ALJ ultimately found. [Tr. 18-19 (compare [Tr. 16] (RFC assessment) with [Tr. 110-12] (Dr. Irlandez opined that Plaintiff had abilities consistent with a range of medium work))].

Plaintiff does not challenge the ALJ's consideration of the medical opinions. He instead argues that the ALJ should have found that his reported symptoms were consistent with other evidence. [DE 13-1, at 11-14]. He testified that he could not work because he was "not able to walk . . . hardly half the time," could not breathe, had pain in his lower back and shoulders, and experienced Anxiety. [Tr. 36-37]. He claimed that he had to change positions constantly. [Tr. 40].

But the ALJ gave good reasons for finding that Plaintiff's reported symptoms were inconsistent with other evidence and thus could not support greater RFC limitations. See [Tr. 17-18]; *see also Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389-90 (6th Cir. 2015) (unpublished) (ALJ is required to incorporate only those limitations that he accepted as supported by the evidence).

The ALJ's symptom evaluation is due great deference by the Court. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 531 (6th Cir. 2014) (unpublished) ("[C]ourts generally defer to an

6

ALJ's credibility determination . . . .)" (citation omitted). That deference is especially appropriate here because the ALJ's reasoning was supported by more than the requisite "mere scintilla" of evidence necessary to survive the Court's highly deferential review. *See Biestek*, 139 S. Ct. at 1154.

The ALJ found that objective medical evidence did not support Plaintiff's reported symptoms. [Tr. 14-15, 17-18]; *see also* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."). The ALJ cited generally normal mental status findings at Dr. Rigby's consultative examination, as well as consistently normal mental status findings by Dr. Potter. [Tr. 14-15]; *see also* [Tr. 410, 362, 365, 368, 371, 375, 380-81, 384-85, 393, 400-01, 404-05, 426-27, 432, 420, 417]. The ALJ cited objective studies from 2012 and 2013 showing mild and minimal degenerative changes. [Tr. 17, 70-71, 328, 352]. And the ALJ recognized that, while Dr. Potter observed some reduced range of motion in Plaintiff's left shoulder and lower back and tenderness to palpation in his right hip, there was no evidence of gait abnormality, and he had intact strength and sensation. [Tr. 18, 362, 365, 368, 371, 375, 380-81, 384-85, 393, 400-01, 404-05, 426-27, 432, 420, 417].

The ALJ found that Plaintiff's reported symptoms were inconsistent with his conservative treatment. [Tr. 14, 17]; *see also* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ considers the type

7

and effectiveness of treatment when evaluating symptoms). Regarding Plaintiff's mental abilities, his "record shows very limited and conservative treatment," namely medications, and he "denied any other specialized mental health treatment." [Tr. 14]; *see also* [Tr. 409]. Regarding his reported back pain, the ALJ found that providers recommended, and Plaintiff received, physical therapy and pain management instead of more intensive treatment such as surgery. [Tr. 17]. Indeed, the ALJ discussed the fact that Plaintiff's "treatment during the relevant period has been routine and conservative, consisting of symptom-management" through Dr. Potter. [Tr. 18].

The ALJ found that Plaintiff's activities of daily living were inconsistent with his reported symptoms. [Tr. 14-15]; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ considers a claimant's activities when evaluating symptoms). The ALJ contrasted Plaintiff's reported mental limitations with his ability to run errands, prepare meals, go shopping in stores, drive a car, and attend medical appointments independently. [Tr. 14-15]; *see also* [Tr. 253-54, 290-92, 411].

Finally, the ALJ found that Plaintiff's claim that he could not work due to his mental symptoms was inconsistent with the fact that he had in fact worked with this longstanding impairment. [Tr. 14]; *see also* 20 C.F.R. § 404.1529(c)(4) (ALJ considers a claimant's history when evaluating symptoms). Although Plaintiff

8

claimed that he could not work due, in part, to his anxiety, the ALJ noted Plaintiff's admission that he had "always" had anxiety "but was able to work with these symptoms for a number of years, with no evidence of worsening at his alleged onset date." [Tr. 14]; *see also* [Tr. 409 ("The claimant says that he has mental health problems with anxiety and being nervous. He says that he has always had these problems."), (earnings history)].

The ALJ addressed Plaintiff's claimed need for a cane. The ALJ discussed Plaintiff's testimony that he did not use a cane every day, but he took it with him if he went anywhere. [Tr. 16]. The ALJ found that a cane was not medically necessary because "[t]here is no prescription or recommendation in the record that the claimant use a cane, nor does the objective evidence show that the claimant required the use of any assistive device to ambulate effectively." [Tr. 16]. Indeed, Plaintiff admitted that his cane was not prescribed. *See* [Tr. 48, 257, 294]. He also admitted that he did not use the cane all the time. *See* [Tr. 37-38].

And as the ALJ discussed, Dr. Potter never recorded an abnormal gait or the use of a cane in relation to Plaintiff's gait; rather, he consistently observed that Plaintiff could stand without difficulty. *See* [Tr. 362, 365, 368, 371, 375, 380-81, 384-85, 393, 400-01, 404-05, 426-27, 432, 420, 417]. When Plaintiff came into the Social Security field office in relation to his application, he did not use any assistive device. [Tr. 230]. Given

9

such evidence, the ALJ reasonably concluded that Plaintiff did not require a cane for purposes of the RFC assessment.

Reviewing courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). As such, "even if the evidence could also support a different conclusion, the decision of the [ALJ] must stand if substantial evidence supports the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Here, far more than a mere scintilla of evidence supports the ALJ's evaluation of Plaintiff's reported symptoms, including his claimed need for a cane.

At step five of the sequential evaluation process, an ALJ must determine whether a claimant can do other work existing in significant numbers in the national economy, given his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1). "[I]f there is no other evidence to contradict it, [SSA] will use [a claimant's] numerical grade level to determine [his] educational abilities." 20 C.F.R. § 404.1564(b). Here, Plaintiff completed either the seventh or eighth grade (see Tr. 233, 411). Per agency regulations, this educational level equates to a "limited education," not illiteracy. *See* 20 C.F.R. § 404.1564(b)(1), (3).

10

Consistent with this regulation, the ALJ who denied Plaintiff's prior application for disability benefits made the factual finding that Plaintiff had a "limited education." [Tr. 76]. In making this finding, the prior ALJ discussed educational records showing that, in the eighth grade, Plaintiff tested at a 4.5 grade level. [Tr. 69]. "If the claimant has completed at least a 4th grade education (in any country), it is generally appropriate to find the claimant is literate and assign the claimant to another, more appropriate education category . . . because most people learn to read and write by the time they complete 4th grade." SSA Program Operations Manual System (POMS) DI 25015.010, Education as a Vocational Factor.

Under Acquiescence Ruling (AR) 98-3(6), the ALJ in this case could not find that Plaintiff had a different educational level unless there was new and material evidence relating to that finding or there had been a change in the law, regulations, or rulings. AR 98-3(6). The AR explains:

> [B]ecause a finding of a claimant's . . . education . . . also involves a finding of fact, relating to a claimant's vocational background, which would not ordinarily be expected to change, . . . adjudicators must adopt such a finding from the final decision by an ALJ . . . on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

11

The ALJ in this case recognized that she was bound by AR 98-3(6) and found that, "despite [Plaintiff's] allegations of trouble reading, the record does not contain any new and material evidence to support a different finding regarding [his] educational level." [Tr. 21]. Plaintiff does not point to any new and material evidence relating to the prior ALJ's finding that he had a limited education, nor does he point to any change in the law, regulations, or rulings relevant to evaluating a claimant's educational attainment [DE 13-1, at 7-10]. Rather, he indirectly argues that his numerical grade level was not determinative of his educational abilities because other evidence contradicted it. *See id.* Yet the evidence he cites, including his self-reported limitations and his father-in-law's report, was neither new nor material. The prior ALJ found that Plaintiff had a limited education after discussing Plaintiff's self-reported ability to read only "little" words. [Tr. 68, 76]. And the ALJ in this case found that Plaintiff's self-reported limitations were inconsistent with other evidence and discounted Plaintiff's father-in-law's report. [Tr. 17, 20].

Moreover, even if the ALJ should have limited Plaintiff to the lowest language level recognized by the Dictionary of Occupational Titles (DOT), language level 1, the vocational expert identified one occupation with this minimal language level that Plaintiff could do: marker. [Tr. 52]; *see also* DOT No. 209.587-034, Marker, 1991 WL 671802. While Plaintiff argues that this job

12

requires some level of literacy, his argument glosses over the fact that his past relevant work as a general laborer likewise required language level 1. [Tr. 20, 50]; *see also* DOT No. 939.687-014, Company laborer, 1991 WL 688293. It is untenable for Plaintiff to argue that he has a lower language level than required by a job that he actually performed. And because the vocational expert testified that there were 291,932 nationwide marker positions, any error by the ALJ in relying on occupations with a higher language level would be, at most, harmless error. [Tr. 52]; *see Nejat v. Comm'r of Soc. Sec.,* , 359 F. App'x 574, 579 (6th Cir. 2009) (unpublished) ("Even if we agree we agree that the ALJ's finding included jobs precluded by Nejat's exertional and non-exertional limitations, the ALJ's count of 2000 jobs [for one position] available in the third category withstands Nejat's challenge."); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 574, 579 (6th Cir. 2009) (unpublished) (where two positions conflicted with the DOT but a third did not, the third position alone was substantial evidence in support of the ALJ's decision).

Having reviewed the entire record,

**IT IS ORDERED** as follows:

(1) The Commissioner's final decision is **AFFIRMED**;

(2) The Commissioner's Motion for Summary Judgment (DE 15) is **GRANTED**;

  (3) Griffith's Motion for Summary Judgment (DE 13) is **DENIED**; and

  (4) A separate judgment in conformity herewith shall this date be entered.

  This 28th day of July, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

14